## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN J. RUSSELL,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO.  23-2420** |
| | : | |
| **COMMONWEALTH STATE** | : | |
| **OF PENNSYLVANIA,** *et al.*, | : | |
| **Defendants.** | : | |

## <u>MEMORANDUM</u>

**MURPHY, J.**                                              **October 4, 2023**

      Plaintiff John J. Russell, who is currently incarcerated at the Warren County Correctional

Center in New Jersey, filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983,

asserting violations of his constitutional rights and related state law claims arising from the serial

revocation of his parole and resulting periods of incarceration in Northampton County,

Pennsylvania.  Currently before the Court are Russell's Amended Complaint ("AC" (DI 4)),[1] his

Motion for Leave to Proceed *In Forma Pauperis* and inmate account statement (DI 7, 8), and his

Motion to Appoint Counsel (DI No. 10).[2]  Mr. Russell asserts claims against the following

---

[1] Mr. Russell's initial filing was a seven-page letter that did not satisfy the requirements of
Federal Rules of Civil Procedure 8 and 10.  Additionally, Mr. Russell commenced this action
without paying the required filing fee or requesting leave to proceed *in forma pauperis*.  The
Court's June 28, 2023 Order granted Mr. Russell 30 days in which to pay the required filing fee
or move for leave to proceed *in forma pauperis*, and file an amended complaint that satisfied the
requirements of the applicable Rules of Civil Procedure if he intended to pursue a federal
lawsuit.  (*See* DI 3.)  On July 24, 2023, Mr. Russell filed his Amended Complaint, which is now
ripe for screening.

[2] Mr. Russell has also filed a Request to Proceed in Class Action. (DI 6.)  The Request will be
denied.  A pro se litigant who is not an attorney, may not proceed with a case as a class action
because he may not represent the interests of other litigants.  *See Sinclair v. Citi Mortg., Inc.*, 519
F. App'x 737, 739 (3d Cir. 2013) (per curiam) ("[T]he District Court properly declined to treat
the Sinclairs' case as a class action, as 'one pro se litigant cannot represent another[.]'") (quoting

Defendants:  (1) the Commonwealth of Pennsylvania; (2) Northampton County[3]; (3) the Northampton County Court of Common Pleas; (4) the Northampton County Office of the District Attorney; (5) the Northampton County Office of Adult Probation and Parole; (6) the Northampton County Office of the Public Defender; (7) Northampton Court of Common Pleas Judge Paula A. Roscioli: (8) Northampton District Attorney Terence Houck, and Assistant District Attorneys James Augustine, III, Duminiak, and Bellefatto; (9) Northampton County Adult Probation and Parole Officers Marie Bartosh and Ornthana Buniak; (10) Northampton County Public Defenders Nuria DiLuzio, Paul Bender, and Rory Driscole.[4]  (AC at 14-17.)  All Defendants are named in their individual and official capacities.  (*Id*.)  For the following reasons, Mr. Russell will be granted leave to proceed *in forma pauperis*.  His federal constitutional claims against all Defendants will be dismissed with prejudice.  His state law malpractice claims against Paul Bender and Rory Driscole will be dismissed without prejudice for lack of subject matter jurisdiction.  Mr. Russell's request to proceed as a class action and his motion to appoint counsel will be denied.

---

*Nocula v. UGS Corp.*, 520 F.3d 719, 725 (7th Cir. 2008)); *Ezekoye v. Ocwen Fed. Bank FSB*, 179 F. App'x 111, 113 (3d Cir. 2006) (per curiam) ("[A] pro se litigant may not represent the interest of a class in a class action lawsuit."); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) ("[I]t is plain error to permit [a] litigant who is unassisted by counsel to represent his fellow [plaintiffs] in a class action.").  *See also, Caputo v. Fauver*, 800 F. Supp. 168, 169 (D.N.J. 1992), *aff'd*, 995 F.2d 216 (3d Cir. 1993) (collecting cases and stating, "Every court that has considered the issue has held that a prisoner proceeding pro se is inadequate to represent the interests of his fellow inmates in a class action.")

[3] Although he does not include them in the caption or in his list of Defendants, elsewhere in his AC, Mr. Russell asserts claims against the following Northampton County officials: President Kerry Myers, Vice-President Ronald Heckman, and Executive Director Lamont McClure.  (AC at 48-50.)  Mr. Russell asserts claims against these individuals in their individual and official capacities.  (*Id*.)  The Clerk of Court will be directed to add these individuals to the docket as Defendants.

[4] Many of these Defendants were added via the AC and are not entered on the docket.  The Clerk of Court will be directed to add the missing Defendants to the docket.

## I.   FACTUAL ALLEGATIONS[5]

Mr. Russell alleges that on January 9, 2020, he was sentenced to a 3-23 month term of incarceration in the Northampton County Prison by Defendant Judge Roscioli following Mr. Russell's conviction on a misdemeanor shoplifting charge.  (*Id.* at 20.)  Mr. Russell alleges that Judge Roscioli did not impose any parole conditions as part of the sentence.  (*Id.*)  Mr. Russell alleges that he was granted parole after serving the minimum three-month sentence.  (*Id.* at 21.)  He allegedly reported to the Northampton County Office of Adult Probation and Parole and met with Defendant Buniak, who described conditions of parole to be imposed on Mr. Russell and proceeded to require him to sign a pre-printed form reflecting the conditions she described.  (*Id.*)  He was allegedly told that refusal to agree to the conditions would result in his immediate return to custody, and so he signed the form.  (*Id.* at 22.)  Mr. Russell claims that the Office of Adult Probation and Parole and its employees are not empowered to impose conditions upon a parolee. (*Id.*)

Mr. Russell alleges that he abided by the conditions imposed on him, but approximately seven months after he was paroled, he was arrested and imprisoned for failing to provide a random urine sample and failing to maintain a verifiable address.  (*Id.* at 23.)  Mr. Russell claims that these conditions were illegal because they were not imposed by the Court at the time of his sentencing, but subsequently by employees of the Office of Adult Probation and Parole.  (*Id.*)  His resulting arrest and incarceration were also illegal, and achieved without probable cause or due process, according to Mr. Russell.  (*Id.* at 24.)

---

[5] The allegations set forth in this Memorandum are taken from Mr. Russell's Amended Complaint.  (DI 4.)  The Court adopts the pagination supplied by the CM/ECF docketing system. Additionally, the Court includes facts reflected in the publicly available state court docket, of which this Court may take judicial notice.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

Mr. Russell alleges that in February or March of 2021, he attended a *Gagnon I* probable cause hearing, where he was not represented by counsel. (*Id.* at 24.) He alleges that he was not provided with prior notice of the hearing or the violations to be addressed. (*Id.* at 25.) He claims that he was deprived of due process in connection with the proceeding. (*Id.*) Mr. Russell claims that he was illegally prosecuted by the Northampton County District Attorney's Office and Defendant District Attorneys Houck and Augustine, as well as the Office of Adult Probation and Parole and Defendant Officers Buniak and Bartosh. (*Id.*) The hearing allegedly resulted in a finding of probable cause and Mr. Russell was remanded to custody pending a *Gagnon 2* revocation of parole hearing to be held before Defendant Roscioli. (*Id.*)

Mr. Russell alleges that on April 6, 2021, he attended a *Gagnon 2* parole revocation hearing, presided over by Defendant Roscioli. (*Id.* at 26.) Mr. Russell was represented by Defendant Bender at the hearing. (*Id.*) Defendant District Attorneys Houck and ADA Augustine represented the Commonwealth at the hearing, and Defendants Bartosh and Buniak were present on behalf of the Office of Adult Probation and Parole. (*Id.* at 27.) Mr. Russell claims that he was not provided adequate notice of the hearing, or an adequate opportunity to prepare for the hearing, in violation of his due process rights. (*Id.* at 26.) At the conclusion of the hearing, Defendant Roscioli determined that Mr. Russell had violated one or more conditions of his parole and revoked his parole, sentencing him to serve a six-month term of incarceration in the Northampton County Prison. (*Id.* at 27-28.)

Mr. Russell alleges that upon serving his minimum sentence, he was again granted parole and, in August 2021, reported to the Northampton County Office of Adult Probation and Parole, where he again met with Defendant Buniak. (*Id.* at 28.) During the meeting, as before, Defendant Buniak allegedly described conditions of parole to be imposed on Mr. Russell and proceeded to require him to sign a pre-printed form reflecting the conditions she described. (*Id.*)

He was again allegedly told that refusal to agree to the conditions would result in his immediate return to custody, and so he signed the form. (*Id.* at 28-29.) Mr. Russell again claims that the Office of Adult Probation and Parole and its employees are not empowered to impose conditions upon a parolee. (*Id.*)

Mr. Russell alleges that he abided by the conditions imposed on him, but that approximately six months after he was reparoled, he was again arrested and imprisoned for failing to provide a random urine sample and failing to maintain a verifiable address. (*Id.* at 29-30.) Mr. Russell again claims that these conditions were illegal because they were not imposed by the Court at the time of his sentencing, but subsequently by employees of the Office of Adult Probation and Parole. (*Id.* at 30.) His second arrest and resulting incarceration were also illegal, and achieved without probable cause or due process, according to Mr. Russell. (*Id.* at 31.)

Mr. Russell alleges that in February of 2022, he attended a *Gagnon I* probable cause hearing, where he was not represented by counsel. (*Id*. at 31.) He alleges that he was not provided with prior notice of the hearing or the violations to be addressed. (*Id*. at 31.) He claims that he was deprived of due process in connection with the proceeding and was unable to prepare to defend against the allegations against him. (*Id*. at 31-32.) Mr. Russell claims that he was illegally prosecuted by the Northampton County District Attorney's Office and Defendant District Attorneys Houck and ADA Augustine, as well as the Office of Adult Probation and Parole and Defendant Officers Buniak and Bartosh. (*Id*. at 32.) The hearing allegedly resulted in a finding of probable cause and Mr. Russell was remanded to custody pending a *Gagnon 2* revocation of parole hearing to be held before Defendant Roscioli. (*Id*.)

Mr. Russell alleges that on April 7, 2022, he attended a *Gagnon 2* parole revocation hearing, presided over by Defendant Roscioli. (*Id*. at 33.) Mr. Russell was represented by Defendant Driscole at the hearing. (*Id.*) Defendant District Attorney Houck and ADA

5

Augustine represented the Commonwealth at the hearing, and Defendants Bartosh and Buniak were present on behalf of the Office of Adult Probation and Parole.  (*Id*. at 34.)  Mr. Russell claims that he was not provided adequate notice of the hearing, or an adequate opportunity to prepare for the hearing, in violation of his due process rights.  (*Id*. at 33.)  At the conclusion of the hearing, Defendant Roscioli again determined that Mr. Russell had violated one or more conditions of his parole and again revoked his parole, sentencing him to serve the remaining balance of his original sentence (approximately fourteen months) in the Northampton County Prison.  (*Id*. at 34-35.)

Mr. Russell alleges that in September of 2022, both parole violation convictions were overturned and vacated.  (*Id*. at 35.)  He alleges that Defendants Bender and Driscole, who represented him at the two *Gagnon 2* hearings, cooperated with Defendants Riscioli, Bartosh, and Buniak to achieve the illegal revocations of Mr. Russell's parole.  (*Id*. at 36.)  He claims that their representation of him was constitutionally ineffective and directly resulted in his illegal parole revocations and incarcerations.  (*Id*.)  He further alleges that Defendants Bender and Driscole abandoned him following both *Gagnon 2* hearings, depriving Mr. Russell of his right to appeal the allegedly illegal parole revocations and incarcerations.[6]  (*Id*. at 37.)

Mr. Russell next alleges that Defendant DiLuzio met with him three times at the Northampton County Prison to object to his pro se filings.  (*Id*. at 38.)  She allegedly demanded that Mr. Russell cease filing motions claiming that the public defenders who represented him

---

[6] The publicly available docket in *Commonwealth v. Russell*, CP-48-CR-0003619-2019 (C.P. Northampton) reflects that the revocation proceedings occurred as described by Mr. Russell. Additionally, the docket reflects that on September 21, 2022, Mr. Russell's motion filed pursuant to the Post-Conviction Relief Act seeking vacatur of the Order revoking his parole was granted. (*See id.*)

were ineffective.  (*Id*.)  Additionally, she allegedly demanded that Mr. Russell cease addressing the alleged constitutional violations to which he believed he had been subjected.  (*Id*. at 39.)

Mr. Russell claims that the Northampton County Court of Common Pleas, Defendant Roscioli, and "officers" of that court alleged by Mr. Russell to be employees of the court including Defendants Houck and Augustine, Public Defenders Bender, Driscole, and DiLuzio, and Probation and Parole Officers Buniak and Bartosh engaged in a pattern or practice of conduct that deprives people, including Mr. Russell of their rights under the Constitution, and state and federal law.  (*Id*. at 39-40.)  Mr. Russell also alleges that Assistant District Attorneys Bellefatto and Duminiak oversaw the conduct of the April 2021 and April 2022 *Gagnon 2* hearings, respectively, and are, therefore, responsible for the conduct of the attorneys who represented the Commonwealth at those hearings.  (*Id*. at 41.)

Mr. Russell also alleges that Northampton County is the "overseer" of the individually named Defendants who participated in the allegedly illegal parole revocation hearings and Mr. Russell's attending incarceration.  (*Id*. at 46-47.)  Mr. Russell alleges that the County "engages in a pattern or practice of conduct that deprives people of their rights under the Constitution as well as state and federal law."  (*Id*. at 48.)  Mr. Russell asserts that President Kerry Myers, Vice-President Ronald Heckman, and Executive Director Lamont McClure are liable for the constitutional violations he has experienced as a result of their positions as officers of Northampton County.  (*Id*. at 48-50.)

In short, Mr. Russell alleges that the imposition of conditions on his parole by employees of the Northampton County Office of Adult Probation and Parole violated his due process rights, and that the revocation of his parole and attending incarceration following unconstitutional hearings in which the named Defendants participated constituted further due process violations. He claims that he has been deprived of liberty and suffered mental and emotional stress,

depression, anxiety, and anguish as a result.  (*Id*. at 6.)  Based on the foregoing, Mr. Russell

asserts claims pursuant to 42 U.S.C. § 1983 for illegal imprisonment, false imprisonment, illegal

sentence, ineffective assistance of counsel, abandonment of counsel, cruel and unusual

punishment, due process violations, violation of his equal protection rights, and gross negligence.

(*Id*. at 4; 40.)  Mr. Russell also alleges violation of 42 U.S.C. § 1985.  (*Id.* at 1.)  Mr. Russell

requests declaratory relief and injunctive relief and an award of money damages.  (*Id*. at 6, 42-

43.)

## II.     STANDARD OF REVIEW

The Court will grant Mr. Russell leave to proceed *in forma pauperis* because it appears

that he is incapable of paying the fees to commence this civil action.[7]  Accordingly, his

Amended Complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  That

provision of the Prison Litigation Reform Act requires the Court to dismiss the Amended

Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under §

1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under

Federal Rule of Civil Procedure 12(b)(6), *see Tourscher*, 184 F.3d at 240, which requires the

Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to

state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quotations omitted).  Also, when allowing a plaintiff to proceed *in forma pauperis* the Court

must review the pleadings and dismiss the matter if it determines, *inter alia*, that the action fails

to set forth a proper basis for this Court's subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3)

("If the court determines at any time that it lacks subject-matter jurisdiction, the court must

dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116,

---

[7] Because he is a prisoner, the PLRA requires Mr. Russell to pay the full amount of the filing fee
in installments regardless of the outcome of this case.

122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").  A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction.  *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

"At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the pro se] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Mr. Russell is proceeding pro se, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.   DISCUSSION

### A.   Claims Pursuant to 42 U.S.C. § 1985

Mr. Russell asserts a claim against all Defendants pursuant to 42 U.S.C. § 1985.  (AC at 1.)  42 U.S.C. § 1985(3) creates a cause of action against any two persons who "conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ."  42 U.S.C. § 1985(3).  To state a plausible claim under § 1985(3) a plaintiff must allege the following elements:  (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or

the deprivation of any right or privilege of a citizen of the United States.  *Lake v. Arnold*, 112

F.3d 682, 685 (3d Cir.1997).  Significantly, "'[t]he [statutory] language requiring intent to

deprive of equal protection . . . means that there must be some racial . . . invidiously

discriminatory animus behind the conspirators' action.'"  *United Bhd. of Carpenters & Joiners of*

*Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 835 (1983) (quoting *Griffin v. Breckenridge*,

403 U.S. 88, 102 (1971).  Moreover, a plaintiff must allege specific facts in order to sustain a §

1985(3) claim:

> With near unanimity, the courts have rejected complaints containing mere
> conclusory allegations of deprivations of constitutional rights protected under §
> 1985(3).  A conspiracy claim based upon § 1985(3) requires a clear showing of
> invidious, purposeful and intentional discrimination between classes or
> individuals.

*Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972); *see also Grigsby v. Kane*, 250 F. Supp.

2d 453, 458 (M.D. Pa. 2003) ("[O]nly allegations which are particularized, such as those

addressing the period of the conspiracy, the object of the conspiracy, and actions taken in

furtherance of the conspiracy, will be deemed sufficient.").  Mr. Russell does not allege that any

of the conduct described in his AC was motivated by racial discriminatory animus and his §1985

claim is, accordingly, not plausible and will be dismissed.

> **B.    Claims Pursuant to 42 U.S.C. § 1983**

Mr. Russell also asserts constitutional claims based on violation of his civil rights.  The

vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. §

1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to

be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957

F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).  *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

### 1.   Claims for Injunctive and Declaratory Relief

In his prayer for relief, Mr. Russell requests injunctive relief in the form of an Order requiring the named Defendants to "stop collaboratively engaging in the pattern and practice of conduct that deprives people of their rights under the Constitution as well as state and federal law." (*Id.* at 42.)  He also requests a declaration that the conduct of the named Defendants violated his constitutional rights.  (*Id.*)

### a.   Injunctive Relief

Mr. Russell's request for injunctive relief on behalf of the "people" is improper and cannot be granted because he seeks relief on behalf of others and not himself.  "[T]his Court's Article III mandate is limited to resolution of legal cases and controversies."  *Bey v. Hillside Twp. Mun. Court*, Civ. A. No. 11-7343, 2012 WL 714575, at *7 (D.N.J. Mar. 5, 2012).  In accordance with that principle, a plaintiff may not pursue generalized concerns about government or society through the courts.  *See generally Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam) ("[A] plaintiff raising only a generally available grievance about government – claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large – does not state an Article III case or controversy." (quotations omitted)).  For Mr. Russell's purposes, if his intent is to shed light on societal problems or practices that have not impacted him or caused him harm, the courts are not a proper forum to redress this grievance.

11

Rather, in the courts, he is limited to pursuing a legal case to address policies, practices, or conduct that impacts him, and to seek redress for harm caused to him.  Mr. Russell may pursue a claim on his own behalf in this case, but his request for injunctive relief to benefit others is improper and will be denied.

>    **b.     Declaratory Relief**

Mr. Russell also seeks a declaration that the conduct of the Defendants violated his constitutional rights.  This request for relief is also improper and will be denied.  Declaratory relief is unavailable to adjudicate past conduct.  *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (per curiam) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (per curiam) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").  A declaratory judgment is also not "meant simply to proclaim that one party is liable to another."  *Corliss*, 200 F. App'x at 84 (per curiam); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (per curiam) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

>    **2.     Constitutional Claims Against the Northampton County Public Defender's Office, DiLuzio, Bender, and Driscole**

Mr. Russell asserts constitutional claims under —1983 against the Northampton County Public Defender's Office and Public Defenders DiLuzio, Bender, and Driscole based upon the individuals Defendants' representation of him in parole revocation hearings and DiLuzio's alleged request that he cease filing motions claiming that the public defenders who represented him were ineffective.  However, "a public defender does not act under color of state law when

performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) (footnote omitted). "Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court." *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999). *See also Clark v. Punshon*, 516 F. App'x 97, 99 (3d Cir. 2013) (per curiam) (noting that a court-appointed attorney is not a state actor for purposes of § 1983); *Webb v. Chapman*, 852 F. App'x 659, 660 (3d Cir. 2021) (per curiam) ("[A]ttorneys representing individuals in criminal proceedings generally are not state actors for purposes of § 1983."); *Singh v. Freehold Police Dep't*, No. 21-10451, 2022 WL 1470528, at *2 (D.N.J. May 10, 2022) ("Plaintiff['s] dissatisfaction with the representation provided by Mr. Moschella does not provide a basis for a civil rights claim against him."). "[B]efore private persons can be considered state actors for purposes of section 1983, the state must significantly contribute to the constitutional deprivation." *Angelico*, 184 F.3d at 278 (quoting *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1266 (3d Cir. 1994)).

Because public defenders are not state actors "when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding," *Dodson*, 454 U.S. at 325 (footnote omitted), their employing entities, *i.e.*, public defender's offices, have been treated similarly in this context. *See Dorn v. Aguilar*, 645 F. App'x 114, 115 (3d Cir. 2016) (per curiam) ("As explained by the District Court, Dorn did not state a claim for relief against his public defender or the public defender's office because neither is a state actor for purposes of § 1983."); *see also Gannaway v. PrimeCare Med., Inc.*, 652 F. App'x 91, 95 (3d Cir. 2016) (per curiam) ("We also conclude that the District Court properly granted summary judgment to the defendants on Gannaway's claims against the Berks County Public Defender's Office and the appointed lawyers who represented him in criminal proceedings." (citing *Polk Cty.*)). Because the

individual public defenders and their employer, the Northampton County Public Defender's Office are not state actors, Mr. Russell's constitutional claims against them must be dismissed with prejudice.

>    **3.**    **Claims Against the Commonwealth of Pennsylvania, its Departments, and Agencies**

>    **a.**    **Commonwealth of Pennsylvania**

Mr. Russell asserts a claim for money damages against the Commonwealth of Pennsylvania.  However, states are not considered "persons" for purposes of § 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989).  Furthermore, the Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages.  *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  The Commonwealth of Pennsylvania has not waived that immunity.  *See* 42 Pa. Cons. Stat. § 8521(b).  Accordingly, the claims for money damages that Mr. Russell seeks to assert against the Commonwealth of Pennsylvania are dismissed with prejudice.

>    **b.**    **Northampton County Court of Common Pleas and Office of Adult Probation and Parole**

The Commonwealth's immunity extends to its Courts of Common Pleas, which, as part of Pennsylvania's Unified Judicial System, share in the Commonwealth's Eleventh Amendment immunity.  *See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005).  Mr. Russell's claims for money damages against the Northampton County Court of Common Pleas are accordingly dismissed with prejudice. The Commonwealth's immunity also extends to the Northampton County Office of Adult Probation and Parole since it too is part of the Commonwealth's Unified Judicial System.  The Third Circuit has repeatedly held that "Pennsylvania's judicial districts, including their probation and parole departments, are entitled

14

to Eleventh Amendment immunity." *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551 F.3d 193, 197 (3d Cir. 2008) (citing *Benn.*, 426 F.3d at 241 (holding that Pennsylvania's Judicial Districts are entitled to immunity from suit under the Eleventh Amendment)).  These claims too will be dismissed with prejudice.

### c.       Northampton County District Attorney's Office

The Third Circuit has held that District Attorneys' offices in Pennsylvania are not entities subject to suit under § 1983.  *See Reitz v. Cty. of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997) (holding that "the Bucks County District Attorney's Office is not an entity for purposes of 1983 liability").  Mr. Russell's claims for money damages against the Northampton County District Attorney's Office are accordingly dismissed with prejudice.

### 4.       Official Capacity Claims

Having dismissed Mr. Russell's claims for money damages against the Commonwealth, its judicial agencies, and the Northampton County District Attorney's Office, the Court will next address the official capacity claims asserted against the employees of these entities.  Suits against state officials acting in their official capacities are really suits against the employing government agency.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dep't. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*  Thus, the official capacity claims against Judge Roscioli and Adult Probation and Parole Officers Bartosh and Buniak are actually claims against the Northampton County Court of Common Pleas.  The official capacity claims against District Attorney Houck, ADA Augustine, ADA Duminiak, and ADA Bellefatto are actually claims against the Northampton County

District Attorney's Office.  These claims are dismissed with prejudice for the same reasons that the direct claims against these entities have been dismissed.

### 5.    Individual Capacity Claims

#### a.    Judge Roscioli

Mr. Russell asserts an individual capacity claim against Defendant Roscioli based on her revocation of his parole on two occasions.  However, judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction.  *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (per curiam); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (per curiam).  An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge."  *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000).  Moreover, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'"  *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).

Mr. Russell does not allege that Judge Roscioli acted outside of the course and scope of her judicial duties when she revoked his parole.  Indeed, the conduct described is undeniably judicial in nature.  Moreover, there is no suggestion that Judge Roscioli as a Judge of the Court of Common Pleas acted in the complete absence of all jurisdiction.  Because decisions regarding parole revocation are functions normally performed by a judge, Judge Roscioli enjoys absolute immunity for claims based on that conduct.  Accordingly, Mr. Russell's claims against Judge Roscioli are dismissed with prejudice.

      **b.**       **District Attorney Houck, and ADAs Augustine, Duminiak, and Bellefatto**

Mr. Russell asserts claims against Defendants Houck, Augustine, Duminiak, and Bellefatto based on their representation of the Commonwealth in the *Gagnon 2* revocation hearings involving Mr. Russell.  Prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case."  *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976).  Moreover, district attorneys and other supervisory prosecutors are likewise entitled to absolute immunity from claims based on their role in pursuing a prosecution on behalf of the Commonwealth.  *See Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009).  Because all of the conduct alleged to have been engaged in by the named district attorney Defendants occurred in the course of their representation of the Commonwealth in Mr. Russell's parole revocation hearings, they are entitled to absolute immunity and the claims against them must be dismissed with prejudice.

      **c.**       **Adult Probation and Parole Officers Bartosh and Buniak**

Mr. Russell alleges that Buniak imposed conditions on his parole without the authority to do so, and that both Bartosh and Buniak participated in the Gagnon 2 hearings, asserting violations of the allegedly illegally imposed conditions as the basis for revocation of Mr. Russell's parole and his incarceration.  Mr. Russell's claims against Bartosh and Buniak are best understood as due process claims.

The Fourteenth Amendment to the United States Constitution provides that the State may not "deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV.  An examination of a procedural due process claim under the Fourteenth Amendment proceeds in two steps.  *See Board of Regents of State Colleges v. Roth*, 408 U.S.

564, 571 (1972).  First, the court must determine whether there exists a liberty or property

interest which has been interfered with by the state.  *Kentucky Dep't of Corrections v. Thompson*,

490 U.S. 454, 460 (1989) (citing *Board of Regents*, 408 U.S. at 571).  Second, if and only if a

petitioner establishes the existence of a protected interest, the court must examine whether the

procedures attendant upon that deprivation were constitutionally sufficient.  *Id*.

An underlying liberty interest can be derived directly from the Due Process Clause or

from the state's statutory scheme.  *See Asquith v. Dep't of Corr.*, 186 F.3d 407, 409 (3d Cir.

1999) ("A protected liberty interest may arise from only one of two sources:  the Due Process

Clause or the laws of a state.").  The Supreme Court has held that the Constitution does not

establish a liberty interest in parole that invokes due process protections.  *See Greenholtz v.

Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  Thus, if prisoners in

Pennsylvania have a protected liberty interest in some aspect of their parole, it must derive from

Pennsylvania law.  *See Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) (recognizing that "States

may . . . create liberty interests which are protected by the Due Process Clause").  The statutes

governing Pennsylvania's Board of Probation and Parole, however, do not grant state prisoners

any constitutionally protected liberty interest in being released on parole prior to the expiration

of their controlling maximum sentences.  *See Burkett v. Love*, 89 F.3d 135, 139 (3d Cir. 1996)

(recognizing the general principle that the Pennsylvania parole statute does not create a liberty

interest in the right to be paroled); *Coady v. Vaughn*, 770 A.2d 287, 289 (Pa. 2001) ("It is

undisputed that [an inmate] does not have a clear legal right to the grant of parole, nor does the

board have a corresponding duty to grant the same.").  Since Mr. Russell has no constitutionally

protected liberty interest in being granted parole, remaining on parole, or any parole procedures,

his claim for a due process violation based on Defendant Buniak's imposing conditions on his

release, and Bartosh's and Buniak's participation in the *Gagnon 2* hearings necessarily must

fail. *See, e.g., Newman v. Beard*, 2008 WL 2149605, at *2 (W.D. Pa. May 21, 2008) (claim for

violation of due process based on deficient parole procedures in interview conducted by the

Pennsylvania Board of Probation and Parole fails because there is no liberty interest in parole or

any of its procedures); *Nellom v. Luber*, 2004 WL 816922, at *10 (E.D. Pa. Mar. 18, 2004) (due

process claim based on parole procedures fails because there is no constitutionally

protected liberty interest in either being granted parole or having a parole hearing).  For these

reasons, Mr. Russell's due process claims against Buniak and Bartosh are dismissed as

implausible pursuant to 28 U.S.C. § 1915(e)(2)(B).

### 6.      Claims Against Northampton County, Myers, Heckman, and McClure

Mr. Russell asserts claims against Northampton County and its leaders.  Mr. Russell

alleges that the County is the "overseer" of, and therefore responsible for, the individually named

Defendants who participated in the allegedly illegal parole revocation hearings and Mr. Russell's

attending incarceration.  (AC at 46-47.)  Mr. Russell asserts that Defendants Myers, Heckman,

and McClure are liable based on their leadership positions in the Northampton County

government.  For the following reason, Mr. Russell's claims are not plausible and will be

dismissed.

Mr. Russell asserts several bases for his claims against Northampton County.  First, he

claims that the County is vicariously liable for the conduct of the individual Defendants who

participated in the conduct resulting in the revocation of his parole and his consequent

incarceration.  Second, he claims that the County itself engaged in a pattern or practice that

resulted in the constitutional violations he suffered related to his parole revocation.  Finally, he

claims that County executives are the "overseers" of the individuals who allegedly violated his

constitutional rights, and they, and as a result, the County, are vicariously liable for those

violations.  These claims are not plausible.  Claims against Northampton County based on the

19

actions of the District Attorney's Office Defendants are not plausible because District Attorney
Houck and ADAs Augustine, Duminiak, and Bellefatto are employed by the Northampton
County District Attorney's Office, not Northampton County.  As a judge of the Court of
Common Pleas, Judge Roscioli is an employee of the Commonwealth's Unified Judicial System.
Thus, her actions also cannot be attributable to Northampton County.  Defendants Buniak and
Bartosh are employed by the Northampton County Office of Adult Probation and Parole, which
is also part of the Commonwealth's Unified Judicial System, and thus they are not employees of
Northampton County.  Accordingly, Mr. Russell's attempt to hold Northampton County liable
for their actions and his allegations that Northampton County was consequently involved in a
deprivation of his rights fail to state plausible claims and will be dismissed.

### C.    State Law Malpractice Claims

Having dismissed Mr. Russell's federal law claims with prejudice, the Court will not
exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims.
Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. §
1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy
exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens
of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,'
even though only minimal diversity is constitutionally required.  This means that, unless there is
some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any
defendant.'" *Lincoln Ben. Life Co*, 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546
U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)
(internal footnotes omitted)).  An individual is a citizen of the state where he is domiciled,
meaning the state where he is physically present and intends to remain.  *See Washington v.*

*Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment."  *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010).  It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, C.A. No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Mr. Russell does not allege the citizenship of the parties.  Although he is currently housed in a jail in New Jersey, Mr. Russell's domicile is the state in which he was domiciled before his imprisonment.  He does not allege where he was formerly domiciled, nor does he allege the citizenship of either Paul Bender or Rory Driscole.  Rather, he alleges only that they are public defenders in Northampton County.  Accordingly, Mr. Russell has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue.  Mr. Russell's state law malpractice claims against Public Defenders Bender and Driscole will therefore be dismissed without prejudice for lack of subject matter jurisdiction.  Mr. Russell may reassert these claims in an appropriate state court.[8]

## IV.   CONCLUSION

For the reasons stated, Mr. Russell's federal constitutional claims against all named Defendants under 42 U.S.C. §§ 1983 and 1985 will be dismissed with prejudice.  His state law malpractice claims against Paul Bender and Rory Driscole will be dismissed without prejudice

---

[8] Should Mr. Russell to able to assert that the parties are of completely diverse citizenship, the Court will permit him to file an amended complaint to reallege his state law claims.  Otherwise, he must pursue these claims in state court.

for lack of subject matter jurisdiction.  Mr. Russell's request to proceed as a class action and his

motion for appointment of counsel will be denied.  An appropriate Order follows.